NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| VICKI MORGAN-HICKS, Administratrix of the Estate Of Denzel Morgan, <br><br> Plaintiff <br> v. <br><br> NEW JERSEY DEP'T OF CORR., *et al.*, <br><br> Defendants | Civ. No. 17-655 (RMB-JS) <br><br> **OPINION** |

APPEARANCES:

Clifford P. Yannone, Esq.
STARKEY KELLY KENNEALLY CUNNINGHMAM & TURNBACH
1593 Route 88 W
Brick, NJ 08724
     On behalf of Plaintiff

Timothy P. O'Brien, Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 112
Trenton, NJ 08625
     On behalf of Defendants

**BUMB, United States District Judge**

     This matter comes before the Court upon Defendants Sgt. Peter
Tambini, Sergeant George Goldner, Corrections Officer Giovanni
Nieves, Corrections Officer Matthew Canto and Corrections Officer
John Jaquez's ("Defendants") Motion for Summary Judgment ("Defs'

Mot. for Summ. J.," ECF No. 48.)[1] Plaintiff is the administratrix of the estate of the decedent, Denzel Morgan. Morgan was a prisoner on January 31, 2017, when he brought this civil rights action for excessive force, failure to intervene and malicious prosecution. Morgan died in a subsequent unrelated incident. For the reasons discussed below, the Court grants Defendants' motion for summary judgment.

I.   BACKGROUND

Denzel Morgan ("Morgan") filed the original complaint in this matter on January 31, 2017. (Compl., ECF No. 1.) On April 18, 2017, Defendants New Jersey Department of Corrections, Corrections Officer Ceka, and the remaining individual defendants in their official capacities were dismissed from this action. (Stip. and Order of Dismissal, ECF No. 19.) Denzel Morgan died on November

---

[1] Also before the Court are Defs' Brief in Supp. of Mot. for Summ. J., (Defs' Brief, ECF No. 48-8); Plaintiff's Brief in Opposition to Defendants' Mot. for Summ. J. ("Pl's Opp. Brief," ECF No. 51); Plaintiff's Supplemental Statement of Disputed Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Pl's Supp. SODMF," ECF No. 54); and Defendants' Response to Plaintiff's Supplemental Statement of Disputed Material Facts in Opposition to Defendants' Motion for Summary Judgment ("Defs' Reply," ECF No. 55); Pl's Supplemental Brief in Opposition to Summary Judgment ("Pl's Supp. Brief, ECF No. 58); Supplemental Brief on Behalf of Defendants ("Defs' Supp. Brief," ECF No. 61); Defendants' Supplemental Statement of Material Facts ("Defs' Supp. SOMF," ECF No. 61-1,); and Plaintiff's Response to Defendants' Supplemental Brief (Pl's Resp. to Defs' Supp. Brief, ECF No. 62.) Defendants Steven Walker and John Does remain in this action, although it does not appear they have been served. The Court will direct Plaintiff to show cause why the claims against these defendants should not be dismissed for failure to prosecute.

27, 2017, and Plaintiff's counsel filed an application to substitute party. (Not. of Mot. for Substitution of Party, ECF No. 41.) Plaintiff filed an amended complaint on May 3, 2018. (Am. Compl., ECF No. 45.) After Defendants filed a motion for summary judgment and Plaintiff filed an opposition brief, the Court ordered supplemental briefing by the parties, and those briefs are now before the Court. (Mem. and Order, ECF No. 57.)

## II. PLEADING ERROR

Morgan was a convicted prisoner incarcerated in Garden State Youth Correctional Facility ("GSYCF") in September 2015. (Am. Compl., at 4-5.) Plaintiff alleged Defendants used excessive force against Morgan on September 5, 2015, in violation of the Fourth and Fourteenth Amendments. (Id.) Excessive force claims against convicted prisoners, however, arise under the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992).

Defendants did not raise the issue of Plaintiff's pleading error in their initial summary judgment motion. (Defs' Brief in Supp. of Mot. for Summ. J., ECF No. 48-8.) Further, Defendants did not move for summary judgment on Plaintiff's failure to intervene claims brought under the Fourth and Fourteenth Amendments, or Plaintiff's malicious abuse of prosecution claim, which was brought under § 1983 and the NJCRA without identifying a constitutional amendment. (Defs' Brief in Supp. of Mot. for Summ. J., ECF No. 48-8.) Then, in opposition to summary judgment,

3

Plaintiff argued that she established Defendants' use of excessive force in violation of the Fourth and Eighth Amendments. (Pl's Opp. Brief, ECF No. 51 at 9-13.)

This Court ordered the parties to submit supplemental briefs, directing the parties to address (1) the constitutional amendment under which the excessive force claims arose; and whether Defendants intended to move for summary judgment on Plaintiff's failure to intervene and malicious prosecution claims. (Mem. and Order, ECF No. 57.) In Plaintiff's supplemental brief, Plaintiff asserted her excessive force claims under the Fourth and Eighth Amendments, her failure to intervene claims under the Fourth Amendment and her malicious abuse of process claims under the Fourth Amendment. (Pl's Supp. Brief, ECF No. 58.)

In Defendants' supplemental brief, they moved for summary judgment on the basis that Plaintiff failed to submit competent evidence establishing an Eighth Amendment excessive force claim; Plaintiff failed to submit competent evidence supporting a failure to protect claim, implicitly under the Eighth Amendment;[2] and Plaintiff failed to state a malicious abuse of prosecution claim under the Fourth Amendment. (Defs' Supp. Brief, ECF No. 61.) Plaintiff filed a response, asserting that each § 1983 claim falls

---

[2] Defendants cited to Smith v Mensinger, 293 F.3d 641 (3d Cir. 2002) and Knox v. Doe, 487 F. App'x 725, 728 (3d Cir. 2012), cases arising under the Eighth Amendment. (Defs. Supp. Brief, ECF No. 61 at 15.)

under the Fourth and Eighth Amendments. (Pl's Resp. to Defs' Supp. Brief, ECF No. 62.)

To assert a claim under 42 U.S.C. § 1983, a plaintiff must identify the constitutional amendment at issue. See Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force….")) If excessive force is used during a stop or arrest, the § 1983 claim is governed by the Fourth Amendment. Graham, 490 U.S. at 394; Kingsley v. Hendrickson, 576 U.S. 389, (2015) If excessive force is used against a convicted prisoner, the § 1983 claim is governed by the Eighth Amendment. Hudson, 503 U.S. at 5; Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000.)

Failure to intervene claims brought by convicted prisoners for incidents occurring in prison are governed by the Eighth Amendment, whereas the Fourth Amendment governs claims brought by arrestees. See e.g. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002) (Eighth Amendment); Rivera v. Como, 733 F. App'x 587, 590 (3d Cir. 2018) (Fourth Amendment). Malicious prosecution claims arise under the Fourth Amendment.

The question now arises whether Plaintiff may proceed on her Eighth Amendment excessive force and failure to intervene claims against Defendants, not having identified the claims as such in

the Amended Complaint. Federal Rule of Civil Procedure 8(e) provides "Construing Pleadings. Pleadings must be construed so as to do justice."

Here, Defendants never raised the issue of the deficiency in Plaintiff's Amended Complaint. After the Court requested supplemental briefing on the summary judgment motion, the parties addressed the claims under the Eighth Amendment. Under the circumstances, the Court finds it is in the interests of justice to construe the excessive force and failure to intervene claims as arising under the Eighth Amendment, and to address them as so. See Anton v. Guarini, Civil Action No. 09-2899, 2010 WL 5258219, at *6 (E.D. Pa. Dec. 22, 2010) (construing 1983 claims to do justice under Fed. Rule Civ. P. 8(e)); accord Minyard v. City of Philadelphia, Civ. Action No. 11-246, 2012 WL 3090973, at *1 n.1 (E.D. Pa. July 31, 2012).

III. DISCUSSION

    A.    The Amended Complaint

    Denzel Morgan, Plaintiff's decedent, was lodged as an inmate at Garden State Youth Correctional Facility ("GSYCF") in Yardville, New Jersey on September 5, 2015. (Am. Compl., ECF No. 45 at 3,[3] ¶1.) Asserting jurisdiction under 42 U.S.C. § 1983, Plaintiff alleged the following. During dinner at GSYCF on

---

[3] All page number citations are to the numbers assigned by the Court's CM/ECF system.

6

September 5, 2015, Morgan saw Defendant Nieves in possession of tobacco. (Am. Compl., ECF No. 45, ¶2.) When Morgan was alone in his cell later that evening, Defendant Nieves opened the cell door with a key, entered the cell and without justification punched Morgan in the head and face and kicked him. (Id., ¶¶3-4.) Upon information and belief, Defendant Nieves assaulted Morgan because Morgan saw Nieves in possession of tobacco earlier that day. (Id., ¶5.)

Shortly thereafter, Defendant Canto arrived at Morgan's cell and without justification struck Morgan in the head and face, kicked his body and sprayed OC in his face. (Id., ¶6.) Defendants Jaquez, Tambini and Goldner also responded to Morgan's cell and assaulted Morgan without justification. (Id., ¶¶7-8.) Defendants Nieves, Canto, Jaquez, Tambini and Goldner continued to assault Morgan as they removed him from his cell and transported him to a cell block day room. (Am. Compl., ECF No. 45, ¶¶9-10.) As a result of the assault by the defendants, Morgan sustained bodily injuries and emotional distress. (Id., ¶12.)

In Count One, Plaintiff alleged Defendants violated Morgan's rights under the Fourth and Fourteenth Amendments of the United States Constitution by using excessive force. (Id. at 4-5.) In Count Two, Plaintiff alleged Defendants failed to intervene in the assault on Morgan in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (Id. at 5-6.)

Plaintiff alleged in Count Three that Defendants Nieves, Canto, Jaquez, Tambini and Goldner, to protect themselves from criminal prosecution and/or civil liability, used a legal process to misrepresent the facts of their encounter with Morgan. (Id. at 6-7.) Plaintiff alleged this was a malicious abuse of process in violation of the Fourth and Fourteenth Amendments to the United States Constitution. (Id.)

In Count Four, Plaintiff alleged Defendants Tambini and Goldner were the supervisory officers in charge at the time Morgan was assaulted, and they failed in their duty to prevent Defendants Nieves, Canto and Jaquez from violating Morgan's constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. (Am. Compl., ECF No. 45 at 7-8.) Plaintiff further alleged Defendants Tambini and Goldner either directed Defendants Nieves, Canto and Jaquez to violate Morgan's rights or they knew of and acquiesced in their subordinates' violations. (Id.)

In Count Five, Plaintiff alleged that the excessive force, failure to intervene, abuse of process and supervisory liability of Defendants Nieves, Canto, Jaquez, Tambini and Goldner deprived Morgan of his substantive due process right to be free from unlawful seizure of his person, his right to due process and his fundamental right to liberty secured by the Constitution of the

United States and the Constitution of the State of New Jersey in violation of N.J.S.A. 10:6-1 *et seq.* (Id. at 8-9.)[4]

B.   Undisputed Material Facts[5]

Defendants seek summary judgment, asserting that the following facts are undisputed by competent evidence. Morgan was incarcerated at GSYCF on September 5, 2015. Defendants Goldner, Tambini, Jaquez, Nieves and Canto were employed at GSYCF on September 5, 2015. On September 5, 2015, Canto called an emergency code and went to Morgan's cell. Canto used OC spray on Morgan.

_____

[4] The parties did not brief the claims presented in Count Five, that violation of Morgan's Fourth Amendment rights also constituted a violation of Morgan's Fourteenth Amendment right to due process. Count Five fails as a matter of law.

> Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see e.g. Whitley v. Albers, 475 U.S. 312, 327 (1986) ("We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified."))

[5] See Defendants' Statement of Material Facts (ECF No. 48-1); Plaintiff's Responsive Statement of Material Facts (ECF No. 51-1); Plaintiff's Supplemental Statement of Disputed Material Facts (ECF No. 54-2) Defendants' Response to Plaintiff's Supplemental Statement of Disputed Material Facts (ECF No. 55); and Defs' Supp. SOMF, ECF No. 61-1.)

Jaquez and Tambini also responded to the code. When Tambini arrived, he observed Morgan resisting being handcuffed by Canto and Nieves. Jaquez then assisted by placing the handcuffs on Morgan. Once outside of the cell, Canto and Nieves were immediately separated from Morgan. Tambini saw that Canto and Nieves had suffered physical injuries and ordered them to report to the infirmary.

After Morgan was handcuffed, Tambini, who supervised the other officers, ordered them to escort Morgan to the day room to await the arrival of a "suited team" to take over the escort. Morgan had sustained physical injuries. Tambini did not observe anyone strike Morgan at any time. The "suited team" escorted Morgan to the infirmary and he was subsequently transported to St. Francis Medical Center.

Following the incident, each officer prepared a "Special Report" which Tambini used to prepare a "Preliminary Incident Report" based upon his observations, as well as what was reported by the officers involved. Tambini authorized Morgan's prehearing detention based on this incident. Pursuant to protocol, Tambini forwarded the information to the "Center Keeper" which, in turn, directed Tambini to file specific disciplinary charges against Morgan. As such, neither Tambini nor any of the officers involved made the determination to initiate disciplinary charges against Morgan.

Tobacco is considered contraband and is illegal to possess in GSYCF. In 2016, Nieves was arrested and charged with Official Misconduct for smuggling contraband into the GSYCF in 2015. Nieves was terminated from his employment at the New Jersey Department of Corrections ("DOC") based on this conduct. On December 14, 2017, Nieves was convicted of second degree Official Misconduct in Burlington County Superior Court and was sentenced to serve three years in New Jersey State Prison.

C.   Summary Judgment Standard

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there is a genuine issue for trial." Id. at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986) (emphasis in Daubert)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita Elec.

Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986) (footnote omitted in Scott)).

Federal Rule of Civil Procedure 56(c)(2) provides that "a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." "'[H]earsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial.'" McMillian v. Wetzel, 790 F. App'x 455, 459 (3d Cir. 2019) (quoting Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016) (alteration omitted) (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).

Hearsay is an out of court statement that is offered for the truth of the matter asserted. Fed. R. Evid. 801(c)). Hearsay is inadmissible unless it falls under a recognized exception. Fed. R. Evid. 802. In ruling on a motion for summary judgment, the court need only determine if the nonmoving party can produce admissible evidence regarding a disputed issue of material fact at trial. McMillian, 790 F. App'x at 459-60. The proponent need only "explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2), Advisory Committee Note.

Defendants contend Plaintiff has offered no competent evidence that they violated Morgan's rights. (Defs' Brief in Supp. of Mot. for S.J., ECF No. 48-8 at 13, 16.) Plaintiff submits that

12

the following evidence is sufficient to state a claim and is admissible at trial: (1) Ex. A, Morgan's answers to interrogatories; (2) Ex. B, Inmate Statement of Kideem McLeod; (3) Ex. C, Inmate Statement of Tyquan Strand; (4) Ex. D, Authorization for Prehearing Detention Placement Form of Defendant Sergeant Peter Tambini; (5) Ex. E, Disciplinary Reports of Sergeant Peter Tambini, Corrections Officer Giovanni Nieves, and Corrections Officer Matthew Canto; (6) Ex. F, New Jersey Dep't of Corrections Adjudication of Disciplinary Charge; (7) Ex. G, St. Francis Medical Center records of Denzel Morgan; (8) Ex. H, Rutgers University medical records of Denzel Morgan; (9) Exhibit I, Evaluation of Charles F. Martinson, J.D., M.D.; and (10) Ex. J, transcript of an interview of Denzel Morgan that took place on September 9, 2015. (Decl. of Clifford P. Yannone in Supp. of Pl's Opp. to Defs' Mot. for Summ. J., ECF No. 51-3; Order, ECF No. 53; Pl's Ex. J, ECF No. 54-3.)

D.   Admissibility of Evidence

1.   Answers to Interrogatories

Plaintiff relies on Federal Rule of Evidence ("FRE") 807 for admissibility of Morgan's answers to interrogatories. (Pl's Supp. Brief, ECF No. 58 at 2-3.) Plaintiff argues that Morgan's answers to interrogatories are admissible because they are certified under oath and analogous to deposition testimony. (Id., citing Treharne

v. Callahan, 426 F.2d 58, 62-64 (3d Cir. 1970); Tamez v. City of
San Marcos, 118 F.3d 1085, 1098 (5th Cir. 1997.)

Defendants respond that Treharne, cited by Plaintiff, has
been rendered obsolete by the 1970 and 1975 revisions of the Rules
of Civil Procedure and the adoption of the Federal Rules of
Evidence. (Defs' Supp. Brief, ECF No. 61 at 7, citing Botkin ex
rel. Barnes v. Metro Life Ins. Co., 907 A. 2d 641 (Pa Super. Ct.
2006)). Thus, answers to interrogatories may only be used to the
extent permitted by the rules of evidence. Defendants also contend
that Tamez is distinguishable, as there, both parties were
permitted to use portions of the decedent's interrogatories to
advance their respective interests at trial.

The Court agrees that the cases cited by Plaintiff are not
helpful. Treharne is obsolete. Admissibility of hearsay, in this
instance, falls under the residual exception of FRE 807. In Tamez,
unlike here, the responses to interrogatories would have been
admissible at trial as admissions of a party opponent under FRE
801(d)(2)(A) and (B). Tamez, 118 F.3d at 1098.

The rule governing consideration of hearsay statements in
opposition to summary judgment is that "hearsay statements can be
considered on a motion for summary judgment if they are capable of
admission at trial." Shelton v. Univ. of Med. & Dentistry of New
Jersey, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (citing Stelwagon
Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n. 17

(3d Cir. 1995)). Thus, the Court must look to the Federal Rules of Evidence.

Plaintiff suggests Morgan's answers to interrogatories are admissible under FRE 807. FRE 807, the residual exception to admissibility of hearsay, provides, in relevant part:

> (a) Under the following conditions, a hearsay statement is not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804:
>
> > (1) the statement is supported by sufficient guarantees of trustworthiness--after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and
> >
> > (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

FRE 807 should only be used in rare cases. <u>Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.</u>, 247 F.3d 79, 112 (3d Cir. 2001). Answers to interrogatories by an unavailable party are generally not considered trustworthy because the party has motive to set forth facts in the light most favorable to itself and the party was not subject to cross-examination. <u>See Kirk v. Raymark Indus. Inc.</u>, 61 F.3d 147, 167 (3d Cir. 1995) ("interrogatory response of a co-defendant who is seeking to avoid liability lacks the 'circumstantial guarantees of trustworthiness' that are contemplated by Rule 803(24) of the Federal Rules of Evidence");

accord <u>Blackburn v. Northrup Grumman Newport News</u>, No. 05-02895, 2011 WL 6016092, at *1 (E.D. Pa. Aug. 31, 2011) (where party was unable to testify at trial subject to cross-examination and had every incentive to set forth facts in the light most favorable to herself, answers to interrogatories were not sufficiently trustworthy). Thus, the first prong of the test under FRE 807 weighs against admission of Morgan's answers to interrogatories.

Under the second prong of the test under FRE 807, Morgan's answers to interrogatories are not more probative than any other evidence because they were provided almost two years after the incident at the prison and in anticipation of litigation. Neither prong of the test favors admissibility. Therefore, the Court finds Plaintiff's answers to interrogatories (Pl's Ex. A, ECF No. 51-4) are hearsay which may not be offered in opposition to summary judgment.

2.   <u>Inmate Witness Statements</u>

Plaintiff submits that the inmate witness statements of Kideem McLeod and Tyquan Strand are admissible as present sense impressions under FRE 803(1) and records of regularly conducted activity under FRE 803(6). (Pl's Supp. Brief, ECF No. 58 at 3.)[6] Defendants maintain that the witness statements are not admissible as present sense impressions or records of regularly conducted

---

[6] The Court notes the parties did not address whether McLeod and Strand would be available to testify at trial.

activity. As to the former, a present sense impression is a description or explanation of an event or condition, which is made while or immediately after the declarant perceived it. (Defs' Supp. Brief, ECF No. 61 at 9.) Here, Defendants assert that the proffered statements by the declarants were made four days after the event in question. (Id.)

Federal Rule of Evidence 803(1) provides, in relevant part:

> the following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: (1) Present Sense Impression. A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it.

For the exception to apply, the statement must be made "essentially contemporaneous to witnessing the event." United States v. Green, 556 F.3d 151, 155 (3d Cir. 2009) (citing United States v. Mitchell, 145 F.3d 572, 576 (3d Cir. 1998)). The inmate statements here were made four days after the incident, not contemporaneous to the altercation or its aftermath that the inmates alleged they observed. Therefore, the Court finds that the inmate statements may not be used in opposition to summary judgment as present sense impressions.

Defendants further contend that the inmate statements do not qualify as records of regularly conducted activity under FRE 806. (Defs' Supp. Brief, ECF No. 61 at 9.) Defendants argue that the inmates were not providing information to the DOC as part of the

DOC's regular course of activity but rather they were providing statements as "bystanders" to an event. (Id., citing Gordon v Robinson, 210 F.2d 192 (3d Cir. 1954), accord, Zenith Radio Corp. v. Matsushita Elec. Ind. Co., 505 F. Supp. 1190 (E.D. Pa. 1980)).

FRE 803(6) provides:

> (6) Records of a Regularly Conducted Activity.
> A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>>
>> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>>
>> (C) making the record was a regular practice of that activity;
>>
>> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>>
>> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

The Court notes that Plaintiff has not presented testimony of a custodian or other qualified witness to create a foundation, as required by FRE 803(6)(D), nor has Plaintiff cited to a statute that permits certification of the records. United States v. Casoni, 950 F.2d 893, 908-10 (3d Cir. 1991) (citing United States v. Furst,

886 F.2d 558 (3d Cir. 1989), cert. denied, 493 U.S. 1062 (1990)).
Therefore, without having established a hearsay exception,
Plaintiff cannot rely on the inmate statements[7] in opposition to
summary judgment.

If Plaintiff has admissible evidence, which may have been
overlooked, of an inmate who can testify from personal knowledge
that Nieves opened Morgan's cell and assaulted Morgan unprovoked,
Plaintiff may submit a motion for reconsideration[8] of the order
granting Defendants' motion for summary judgment. The Court notes,
however, that Strand's inmate statement indicates that he did not
see what happened in the cell, only that Morgan was handcuffed and
bloody outside the cell. (Pl's Ex. C, ECF No. 54-6.) Assuming that
McLeod remains a prisoner, Plaintiff should also be aware of the
responsibility to pay the expense for his appearance at trial. See
28 U.S.C. § 1821(b); N.J.A.C. § 10A:3-9.13.

3.   NJ DOC Records

Defendants concede that DOC records are admissible under FRE
803(6), the business record exception. However, Defendants argue
that the Hearing Officer's decision that Morgan was not guilty of

---

[7] Pl's Ex. B and Ex. C, ECF Nos. 54-5 and 54-6.

[8] The Court notes that the discovery period has expired but
Plaintiff may submit new evidence if she can meet her burden for
reconsideration under Federal Rule of Civil Procedure 59(e), and
Local Civil Rule 7.1(d)(7); see e.g Max's Seafood Cafe ex rel.
Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).

the disciplinary charges against him is an opinion that is not admissible as a business record. (Defs' Supp. Brief, ECF No. 61 at 10, citing <u>Smith v. Clark</u>, 190 A.2d 441 (Pa. 1963)). In <u>Smith</u>, the Pennsylvania Supreme Court held that it was error to permit an investigating police officer to testify about his opinion on the cause of a motor vehicle accident that he did not witness. <u>Smith</u>, 190 A.2d at 443. The Court held that the cause of the accident was a jury question and the witness's opinion was prejudicial. (<u>Id.</u> at 444.)

Plaintiff, however, relies on the business record exception for admission of the "Adjudication of Disciplinary Charge" completed in connection with Morgan's prison disciplinary hearing for assault on Nieves and Canto. Indeed, "[a] prison is clearly a 'business' within the meaning of the term" in Rule 803(6). <u>Wheeler v. Sims</u>, 951 F.2d 796, 802 n.5 (7th Cir. 1992) (quoting <u>Stone v. Morris</u>, 546 F.2d at 738.

Regulations govern most aspects of a prison disciplinary hearing within the New Jersey Department of Corrections. <u>See</u> NJAC 10A NJ ADC Ch. 4, Subch. 9. Specifically, N.J.A.C. 10A:4-9.24, governing disciplinary decisions, provides:

> (a) After the hearing has been completed, a written statement of the fact-findings shall be given to the inmate by the Disciplinary Hearing Officer or Adjustment Committee Chairperson. This statement shall include evidence relied upon, the decision and the reason for the disciplinary action taken,

> unless doing so would, in the discretionary opinion of the Disciplinary Hearing Officer or Adjustment Committee Chairperson, jeopardize correctional facility security.

This qualifies the Hearing Officer's written report as a record kept in the regular course of the DOC's business.

The public record exception in FRE 803(8) is analogous to the business record exception raised here.[9] A factual finding or conclusion made by a public officer or agency after investigation made pursuant to authority granted by law and reported in a public record, may be admissible under FRE 803(8), subject to indicia of trustworthiness. See Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 167 (1988) ("evaluative reports are admissible 'unless the sources of information or other circumstances indicate lack of trustworthiness'") (quoting Advisory Committee's Notes on FRE 803(8), 28 U.S.C.App., at 724-25.)) The non-exhaustive factors indicating trustworthiness include "(1) the timeliness of the investigation; (2) the investigator's skill and experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." Complaint of Nautilus Motor Tanker Co., Ltd., 85 F.3d 105, 112 (3d Cir. 1996) (quoting Beech Aircraft Corp., at 168 n. 11.))

---

[9] In fact, the public record exception may be applicable here, but it was not raised by the parties.

Here, the "Adjudication of Disciplinary Charge" is dated September 21, 2015, and indicates that a hearing was held over a number of days beginning on September 9, 2015, four days after the alleged assault by Morgan on Nieves and Canto. (Pl's Ex. F, ECF No. 51-9.) However, the Hearing Officer's written decision does not contain any discussion of what occurred at the hearing. (Pl's Ex. F, ECF No. 51-9.)  Thus, there is no explanation of the finding that "due to numerous inconsistencies in staff reports, Hearing Officer unable to support charge."

In the typical case where an evaluative report contained in a public record is admissible under FRE 803(8), the findings of the investigating officer are supported by the information gleaned from the investigation. See e.g. Beech, 488 U.S. 153 (hearsay exception applied to factual finding made in public record based on evaluation of airplane wreckage); Complaint of Nautilus Motor Tanker Co., Ltd., 85 F.3d 105 (3d Cir. 1996) (hearsay exception applied to factual finding made in public record based on Coast Guard evaluation of oil tanker docking); see also FRE 803(8), Advisory Committee Note to Paragraph 8 ("the rule … assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.")

Without benefit of the reasons for the Hearing Officer's conclusion, his finding that Morgan did not assault Nieves and Canto lacks indicia of trustworthiness and will be excluded as

hearsay in opposition to summary judgment. If Plaintiff can meet her burden under Federal Rule of Civil Procedure 59(e) and present admissible evidence of the Hearing Officer's reasons for finding inconsistencies in the staff reports, which may have been overlooked, Plaintiff may seek reconsideration of the order granting Defendants' motion for summary judgment.

       4.   <u>Medical Records</u>

Defendants agree that parts of Morgan's medical records are admissible under FRE 803(4). (Defs' Supp. Brief, ECF No. 61 at 10-11.) However, based on the Advisory Committee Notes to the rule, statements of fault would not ordinarily qualify for admission. (Defs' Supp. Brief, ECF No. 61 at 10, citing FRE 803, Advisory Committee Note to paragraph 4.) Thus, Defendants contend that it would be permissible to admit the statement that the decedent was in an "altercation" with corrections officers, but it would not be permissible to admit a statement that the decedent was "assaulted by corrections officers". (<u>Id.</u>, citing <u>Cestero, et al. v. Ferrara</u>, 57 N.J. 497 (1991) (a statement by a woman in an emergency ward that she waited for a green light before entering an intersection would not be admissible under this Rule) and <u>Dinter v. Sears Roebuck & Co.</u>, 252 N.J. Super. 84 (App. Div. 1991) (a woman's statement to her physician that she slipped on ice was not admissible)).

Federal Rule of Evidence 803(4) governs admissibility of medical records.

> Rule 803(4) provides a hearsay exception for a "Statement Made for Medical Diagnosis or Treatment," which is defined as follows: "A statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4).

United States v. Gonzalez, 905 F.3d 165, 199 (3d Cir. 2018).

> Statements as to fault would not ordinarily qualify under this latter language. Thus a patient's statement that he was struck by an automobile would qualify but not his statement that the car was driven through a red light.

FRE 803(4), Advisory Committee Note to Paragraph 4.

Thus, statements that contain Morgan's denials of his own use of force or legal conclusions as to whether a defendant's use force was excessive are inadmissible. Statements that Morgan was injured in an altercation with corrections officers are admissible but do not created a disputed issue of fact on whether excessive force was used on Morgan.

5.  Expert Report

Defendants contend that Plaintiff's expert report[10] is not admissible under FRE 803(4) as substantive evidence. (Defs' Supp. Brief, ECF No. 61 at 11.) Plaintiff argues that her expert report

---

[10] Pl's Ex. I, ECF No. 51-13.

by Dr. Charles F. Martinson, J.D., M.D. is admissible under FRE

702 as forensic evidence of Morgan's PTSD diagnosis. (Pl's Supp.

Brief, ECF No. 58 at 7-8.)

Admissibility of Plaintiff's expert report is governed by FRE

702 and 703. FRE 703 provides:

> An expert may base an opinion on facts or data
> in the case that the expert has been made aware
> of or personally observed. If experts in the
> particular field would reasonably rely on
> those kinds of facts or data in forming an
> opinion on the subject, they need not be
> admissible for the opinion to be admitted. But
> if the facts or data would otherwise be
> inadmissible, the proponent of the opinion may
> disclose them to the jury only if their
> probative value in helping the jury evaluate
> the opinion substantially outweighs their
> prejudicial effect.

Morgan's hearsay statements to Dr. Martinson can be admitted

under FRE 703, if their probative value outweighs their prejudicial

effect. Morgan's hearsay statements to Dr. Martinson, that

Defendants assaulted him unprovoked, are unduly prejudicial and

may not be used in opposition to summary judgment on the issue of

whether the force used was excessive. Again, evidence that

Plaintiff was injured in an altercation with corrections officers

does not create a disputed issue of fact on whether the corrections

officers used excessive force.

### 6.   Taped SID Interview

Plaintiff contends the taped interview of Morgan by SID

investigators is admissible under FRE 807. (Pl's Supp. Brief, ECF

25

No. 58 at 8-11) (citing Brown v. Philip Morris Inc., 228 F. Supp. 2d 506 (D.N.J. 2002)). Defendants disagree, arguing that Morgan's taped statements were not made under oath, were not subject to cross-examination and were made days after the incident, at a time when Morgan was facing disciplinary charges. (Defs' Supp. Brief, ECF No. 61 at 13).

In reply, Plaintiff offers other circumstantial guaranties of trustworthiness of the taped SID interview. (Pl's Resp. to Defs' Supp. Brief, ECF No. 62 at 2.) First, Morgan was subject to an obstruction offense if he lied to SID investigators. (Id.) Second, Morgan's waiver of Miranda warnings was evidence of the voluntariness of his statements. (Id.) Third, the interview was only four days after the incident, suggesting Morgan's memory was not faulty. (Pl's Resp. to Defs' Supp. Brief, ECF No. 62 at 2.) Fourth, Morgan's statement was corroborated by (1) dismissal of disciplinary charges by Tambini, Nieves and Canto; and (2) termination of Nieves from the DOC and his conviction for official misconduct by smuggling contraband into the facility. (Id.) Fifth, the statements were preserved by videotape, which permits the jury to observe Morgan's demeanor and assess his credibility. (Pl's Resp. to Defs' Supp. Brief, ECF No. 62 at 2.) Finally, this civil action was initiated sixteen months after the incident, suggesting Morgan was not contemplating litigation at that time. (Id.)

26

To be admissible under FRE 807, "the purported evidence must meet five requirements: trustworthiness, materiality, probative importance, interests of justice, and notice." Brown, 228 F.Supp.2d at 511 (citing Coyle v. Kristjan Palusalu Mar. Co., 83 F.Supp.2d 535, 545 (E.D. Pa. 2000), aff'd, 254 F.3d 1077 (3d Cir. 2001). FRE 807 is meant to apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present". Id. (quoting United States v. Bailey, 581 F.2d 341, 347 (3d Cir. 1978)).

> [C]ourts consider the following factors in evaluating the trustworthiness of hearsay evidence: whether the declarant was under oath; the voluntariness of the statement; whether the statement was based on personal knowledge; whether the statement contradicted any previous statement; whether the statement was preserved on videotape to provide the jury an opportunity to evaluate the declarant's demeanor; the declarant's availability for cross-examination; the statement's proximity in time to the events described; whether statement is corroborated; the declarant's motivation to fabricate; whether the statement was prepared in anticipation of litigation; the statement's spontaneity; and whether the declarant's memory or perception was faulty.

Brown, 228 F.Supp.2d at 512 (citing Sternhagen v. Dow Co., 108 F.Supp.2d 1113, 1119 (D. Mont. 1999)).

As to trustworthiness, the SID interview was not taken under oath, Morgan was not subject to cross-examination, and he is unavailable for cross examination. The interview was videotaped and close in proximity to the alleged excessive force; however,

Morgan had a motive to fabricate, to defend against the prison disciplinary charges of assault.

As with the answers to interrogatories, statements that were never subjected to cross examination, in a situation where motive existed to present the facts in the light most favorable to the declarant, weigh against admissibility. Further, although this case was filed sixteen months after the alleged excessive force, the statements might have been made in anticipation of future litigation, delays in filing civil actions are commonplace. Therefore, Plaintiff may not rely on the SID interview[11] in opposition to summary judgment.

E.   Whether Defendants are entitled to summary judgment on Plaintiff's excessive force and failure to intervene claims

Plaintiff contends that she has established a prima facie case of excessive force and failure to intervene in violation of the Fourth and Eighth Amendments of the United States Constitution and the New Jersey Civil Rights Act. (Pl's Supp. Brief, ECF No. 58 at 12, 15-16.) Excessive force claims brought by state prisoners against correctional officers fall under the Eighth Amendment's prohibition on cruel and unusual punishments. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). To state a claim, an inmate must first establish a culpable state of mind, specifically "whether [the]

---

[11] Pl's Ex. J, ECF No. 54-3.

force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 7. The elements of an Eighth Amendment failure to protect claim are (1) that a corrections officer knew that another officer was using excessive force against the inmate; and (2) the corrections officer had a realistic opportunity to intervene but did not do so. Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2002); Evans v. Cameroon, 442 F. App'x 704, 707 (3d Cir. 2011).

It is incumbent on Plaintiff to submit competent evidence to establish a disputed factual issue on the elements of her claims in opposition to summary judgment. This is a difficult burden because Morgan did not provide any statements that were under oath or subject to cross examination before his death. The hearsay exceptions do not permit Plaintiff to rely on Morgan's answers to interrogatories, the inmate statements, Morgan's SID interview, or statements of fault in his medical records or expert report. Therefore, Plaintiff is without admissible evidence that Defendants assaulted him unprovoked. Defendants' deposition testimony, that Plaintiff assaulted Nieves and Canto, and they responded with force necessary to restrain and remove him from his cell, stands undisputed. As discussed above, Plaintiff may seek reconsideration if she can present, in an admissible form, evidence that defendants assaulted Morgan unprovoked.

F.    Whether Defendants are entitled to summary judgment on
      Plaintiff's malicious abuse of process claims

Plaintiff's malicious prosecution claim fails as a matter of

law. The elements of a Fourth Amendment malicious prosecution

claim[12] are

> (1)  the  defendant  initiated  a  criminal
> proceeding; (2) the criminal proceeding ended
> in plaintiff's favor; (3) defendant initiated
> the  proceeding  without  probable  cause;  (4)
> defendant acted maliciously or for a purpose
> other than bringing plaintiff to justice; and
> (5) the Plaintiff suffered a deprivation of
> liberty  consistent  with  the  concept  of  a
> seizure  as  a  consequence  of  a  legal
> proceeding.

Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007) (citing Estate of

Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Plaintiff's Fourth Amendment claim fails because a prison

disciplinary charge is not a criminal prosecution. See Wolff v.

McDonnell,  418  U.S.  539,  556  (1974)  ("Prison  disciplinary

proceedings are not part of a criminal prosecution….") Moreover,

"post-conviction  incarceration  cannot  be  a  seizure  within  the

---

[12] In Black v. Montgomery County, the Third Circuit recognized that
an acquitted criminal defendant may have a stand-alone fabricated
evidence claim under the Fourteenth Amendment Due Process Clause
"if there is a reasonable likelihood that, absent that fabricated
evidence, the defendant would not have been criminally charged."
835 F.3d 358, 371 (3d Cir. 2016). Because the parties address
Plaintiff's  malicious  prosecution  claim  under  the  Fourth
Amendment,  the  Court  will  not  analyze  the  claim  under  the
Fourteenth  Amendment.  In  any  event,  a  Fourteenth  Amendment
malicious prosecution claim also appears to require an element
that the defendant initiated a criminal proceeding. Id.

meaning of the Fourth Amendment." <u>Torres v. McLaughlin</u>, 163 F.3d 169, 174-75 (3d Cir. 1998); <u>see</u> <u>Donahue v. Gavin</u>, 280 F.3d 371, 382 (3d Cir. 2002) ("damages for post-conviction injuries are not within the purview of the Fourth Amendment.") Therefore, Defendants are entitled to summary judgment on Plaintiff's malicious prosecution claims.

      G.   <u>Plaintiff's NJCRA Claims</u>

The NJCRA, N.J.S.A. 10:6-2(c), was modeled on 42 U.S.C. § 1983, and courts have repeatedly construed NJCRA claims as nearly identical to § 1983, using § 1983 jurisprudence as guidance for the analogous NJCRA claims. <u>See</u> <u>Trafton v. City of Woodbury</u>, 799 F.Supp.2d 417, 443-44 (D.N.J. June 29, 2011) (collecting cases)). The parties do not argue that the standard of law is different for Plaintiff's claims under § 1983 and the NJCRA. Therefore, the Court will treat the § 1983 and NJCRA claims alike.

IV. CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion for summary judgment.


An appropriate order follows.

Date: April 24, 2020       s/Renée Marie Bumb
                    **RENÉE MARIE BUMB**
                    **United States District Judge**